William H. BORTHWICK and Frances N. Borthwick, Plaintiffs–Appellees,

v.

FIRST GEORGETOWN SECURITIES, INC. and Darrell Brookstein, Defendants–Appellants.

No. 312, Docket 89–7548.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1989.

Decided Dec. 14, 1989.

Thomas C. Henry, St. Michaels, Md. (Roberts & Henry, St. Michaels, Md., of counsel), for defendants-appellants.

Howard M. Rosenfield, Bristol, Conn., for plaintiffs-appellees.

Before LUMBARD, MESKILL and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

Appellant First Georgetown Securities, Inc. (First Georgetown), a District of Columbia corporation, is a discount securities broker. From September 2, 1982 through September 25, 1985, First Georgetown placed orders for the purchase of various penny stocks on behalf of appellees (the Borthwicks). However, neither First Georgetown nor appellant Brookstein, an officer and director of First Georgetown, was registered as a securities broker as required by the Connecticut Uniform Securities Act (CUSA), Conn.Gen.Stat. § 36–474 (1989). The subsequent sales of those stocks, also made through First Georgetown, resulted in substantial losses to the Borthwicks. On August 17, 1987, the Borthwicks brought suit against appellants for damages pursuant to Conn.Gen.Stat. § 36–498 (1989).

In the district court, the Borthwicks moved for partial summary judgment on count one of their complaint. After hearing oral argument on the motion, the district court ruled from the bench in favor of the Borthwicks on the issue of liability but reserved decision on the calculation of damages, requesting that the parties submit additional briefs on the matter. The Borthwicks filed a supplemental memorandum, including a proposed calculation of damages based on all of the stocks purchased and sold through First Georgetown. Appellants did not timely file a similar brief in opposition. In a written endorsement ruling, the district court accepted the Borthwicks' proposed calculations and awarded total damages pursuant to Conn.Gen.Stat. § 36–498(a) in the amount of $109,210.05, which included interest and attorney's fees. The Borthwicks subsequently moved for and were granted judgment in their favor on count one and dismissal of the remaining counts of their complaint.

## DISCUSSION

### A. *Statute of Limitations*

Securities brokers are required to register with the State Banking Commissioner before conducting business in Connecticut. Conn.Gen.Stat. § 36–474. Appellants admit that they were not registered when the purchases and sales of the securities in question were made. Nevertheless, they contend that the district court erred in its award of damages because the Borthwicks were barred by the statute of limitations from recovering a large portion of their alleged losses.

An action alleging violation of the broker registration requirement of Conn.Gen.Stat. § 36–474 must be brought no later than "two years after the contract of sale." Conn.Gen.Stat. § 36–498(f) (1989). This action was commenced on August 17, 1987; thus, the operative date for purposes of the statute of limitations is August 17, 1985. All but four of the Borthwicks' purchases were made before August 17, 1985. The Borthwicks nonetheless maintain that the

remedy provided by Conn.Gen.Stat. § 36–498 is available when securities are purchased from or when sold to an unregistered broker. Thus, they contend that they may recover on not only those securities purchased within the two year period prior to the commencement of this action, but also on those sold through First Georgetown after August 17, 1985 but purchased through First Georgetown before that date. By contrast, appellants argue that the running of the statute of limitations commences with the purchase of the securities, and that therefore the Borthwicks are barred from recovering on all but four of the transactions in question.

Section 36–498 provides a cause of action based on violations of the broker registration requirement. It is entitled "Buyer's remedies" and provides, in pertinent part, that

[a]ny person who: (1) Offers or sells a security in violation of subsection (a) of section 36–474 ... is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.

Conn.Gen.Stat. § 36–498(a). The language of this section refers only to purchases of securities from a broker, and not to sales to a broker.

We recognize that section 36–498 is a remedial statute, and as such should be construed liberally. *MacPeg Ross O'Connell and Goldhaber, Inc. v. Castello*, 686 F.Supp. 397, 399 (E.D.N.Y.1988); *see Hartford Fire Ins. Co. v. Brown*, 164 Conn. 497, 503, 325 A.2d 228, 232 (1973). However, the construction offered by the Borthwicks is untenable. If, as the Borthwicks suggest, an action under section 36–498 may be brought within two years after a purchase from or a sale to an unregistered broker, the statute of limitations would be effectively subverted. Purchasers of securities could, under the Borthwicks' interpretation, wait to see how their investment pans out. If it results in a loss, they could sell the stocks through an unregistered broker regardless of how long they have held the securities and thereafter bring suit to recover damages.

The Borthwicks maintain that the legislature intended this bizarre result as a means of further deterring unregistered brokers from transacting business in violation of section 36–474. We cannot agree. They cannot point to anything in the language of CUSA or its legislative history that lends support to their interpretation of the statute. The only reasonable construction is that the two year statute of limitations provided in section 36–498(f) begins running at the time the securities are purchased from the unregistered broker. To accept a contrary interpretation would render the statute of limitations largely meaningless without substantially furthering the goal of protecting individuals from unregistered securities brokers.

A question remains, however, about whether appellants waived their statute of limitations defense. When ruling from the bench on the Borthwicks' motion for partial summary judgment, the district court granted the motion on the issue of liability but requested that the parties submit additional briefs on the question of damages and in particular whether the Borthwicks were entitled to attorney's fees as part of *their award of damages.* Although the Borthwicks submitted a supplemental memorandum including a proposed schedule of damages, appellants failed to file a brief in response. The district court, noting the absence of a supplemental brief from appellants, accepted the Borthwicks' proposed damages calculations.

█ The failure to submit a supplemental brief, in this case, did not constitute a waiver of this otherwise proper defense against liability. The district court held appellants liable for all the transactions, even though only four of the purchase transactions took place after August 17, 1985. It did not specifically address appellants' statute of limitations defense in ei-

ther its bench ruling or subsequent endorsement ruling, even though the defense had been properly raised in their answer and their memorandum in opposition to the motion for partial summary judgment. The court's request for additional briefing was not directed at the time frame of the various purchases and sales; rather, the court expressed concern about the scope of the remedy provided by section 36–498(a) when the plaintiff no longer owns the securities and sought assistance from the parties on the issue. Although appellants' failure to respond to the court's request is inexcusable, it was not a waiver of the tendered statute of limitations defense in this case.[1] Under these circumstances, it was error for the district court to have found appellants liable for the purchases that occurred prior to August 17, 1985.

## B. *Commerce Clause*

■ Appellants make a half-hearted claim that CUSA's broker registration requirement imposes an unconstitutional burden on interstate commerce. They contend that a genuine issue of material fact, inappropriate for disposition by summary judgment, underlies this claim. Yet, they have failed to put forward any evidence of the nature of the burdens on interstate commerce created by the registration requirement. An opposing party may not escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts. Once the moving party has come forward with support in the form of the pleadings, depositions, interrogatory answers, admissions or affidavits that no genuine issue of material fact remains to be tried, the opposing party has the burden of providing similar support setting forth specific facts about which a genuine triable issue remains. Fed.R. Civ.P. 56(e); *Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 57

(2d Cir.1987). Appellants have not even attempted to meet this burden.

■ The broker registration requirement imposes a *de minimis* burden on interstate commerce. A person seeking to transact business as a securities broker in Connecticut must register with the State Banking Commissioner. Conn.Gen.Stat. § 36–474 (1989). An application for registration must be accompanied by a statement of financial condition, *id.* § 36–477, a photograph of each principal officer or director of a corporation, of each general partner of a partnership, or of the proprietor of a sole proprietorship, *id.* § 36–479, and a fee of $250, *id.* § 36–480(a). The annual renewal fee is $150. *Id.* § 36–481(a). These provisions do not affirmatively discriminate against interstate commerce, and their minimal and incidental burden on interstate transactions are outweighed by the protection registration affords the buyers and sellers of securities. *See Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). CUSA's broker registration requirement therefore does not violate the Commerce Clause.

## CONCLUSION

The judgment of the district court is vacated, and the matter is remanded to the district court for entry of a new judgment awarding to the Borthwicks damages resulting from those purchases of securities made within the limitations period, along with costs and reasonable attorney's fees as provided by Conn.Gen.Stat. § 36–498(a).

---

1. The district court relied in part on its Local R.Civ.P. 9 (D.Conn.), which provides, in pertinent part: "Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." Although appellants should have filed some kind of response to the district

court's request for supplemental briefing and assuming that Local Rule 9 pertains to these circumstances, we conclude that the pleadings and appellant's prior submissions provided a sufficient basis for determining that they were not liable for the losses sustained in connection with the securities purchased prior to August 17, 1985.